**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Murray Cobb,

Plaintiff,

v.

Lake County Sheriff's Office, Lake County, Illinois, John D. Idleburg in his official capacity, Richard Clouse in his official and personal capacity, Nicholas Kalfas, Timothy Reidy, Jahaira Lopez, Wellpath, LLC, Nicholas Papanos, Kerry Ehlert-Donovan, Caroline Paull, Taryn Weiler, Ryan Sciame, Nicholas Fontana, and Baby Than,

Defendants.

NO. 1:24-CV-03707

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Murray Cobb alleges that his due process rights were violated when he received inadequate medical care as a pretrial detainee at Lake County Jail and McHenry County Jail. R. 123, Second Am. Compl. ¶¶ 1, 5, 118–57.[1] Defendant Ryan Sciame, Chief of Corrections for the McHenry County Jail, moves to dismiss the claims against him. R. 131, Def.'s Mot. Because Cobb fails to plausibly allege that Sciame acted objectively unreasonably, and in any event Sciame is alternatively entitled to qualified immunity, the motion is granted.

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1343.

## I. Background

For the purposes of these motions, the Court accepts as true the factual allegations in Cobb's Second Amended Complaint and draws all reasonable inferences in his favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)). The Court recites only the facts relevant to Sciame.

In October 2022, Cobb suffered severe second-degree burns on approximately 10% of his body, his left arm, and the left side of his stomach and chest; the fire happened when Cobb was not in custody (it happened in his kitchen). Second Am. Compl. ¶ 49. He went to Vista Medical Center East for treatment, which referred him to Loyola University Medical Center Burn Clinic. *Id.* ¶ 50. At the Burn Clinic, he received skin grafts and had multiple follow-up appointments. *Id.* ¶ 51. Cobb initially experienced severe, debilitating pain and discomfort from his burn wounds, and continues to feel pain, itchiness, and discomfort. *Id.* ¶ 52.

In January 2023, Cobb was taken into custody and detained in Lake County Jail. Second Am. Compl. ¶ 54. In December 2023, Cobb was taken to the Burn Clinic, where he was treated by Nurse Paula Peterson. *Id.* ¶ 53, 91. She prescribed him pain medication, lotions, and creams, and ordered that he receive laser treatment for keloid scarring on his chest. *Id.* ¶ 91.

A couple of weeks later, in January 2024, Cobb was transferred to McHenry County Jail. Second Am. Compl. ¶ 94. In April 2024, Cobb sent requests through the detainee portal—called Medical Kites—asking the Jail to schedule his laser

treatment. *Id.* ¶ 96; R. 123-5, Pl.'s Exh. 5, First 04/09/2024 Kite; R. 123-6, Pl.'s Exh. 6, Second 04/09/2024 Kite. Jail nurses responded that Cobb should wait to discuss the issue with the Jail's physician, Dr. Baby Than, at an upcoming appointment. Second Am. Compl. ¶ 96; First 04/09/2024 Kite; Second 04/09/2024 Kite. The next week, Cobb saw Dr. Than, who called the Burn Clinic and left a message for Nurse Peterson about the laser treatment. Second Am. Compl. ¶ 97; R. 123-7, Pl.'s Exh. 7, 04/17/2024 Medical Note. Over the next few months, Cobb submitted multiple Medical Kites requesting an update on the scheduling of his laser treatment. Second Am. Compl. ¶ 98; R. 123-8, Pl.'s Exh. 8, 04/18/2024 Kite; R. 123-9, Pl.'s Exh. 9, 04/22/2024 Kite; R. 123-10, Pl.'s Exh. 10, 05/05/2024 Kite; R. 123-11, Pl.'s Exh. 11, 05/27/2024 Kite; R. 123-12, Pl.'s Exh. 12, 06/09/2024 Kite. Different nurses responded that they did not have further information, that Cobb could discuss the issue with Dr. Than or a nurse at his next appointment, or that they would follow up about scheduling the treatment. Second Am. Compl. ¶ 98; 04/18/2024 Kite; 04/22/2024 Kite; 05/05/2024 Kite; 05/27/2024 Kite; 06/09/2024 Kite.

Eventually, in June 2024, Nurse Nicholas Fontana added a note to Cobb's medical file stating that he had received a call from Nurse Baral at the Burn Clinic, who provided an overview of Cobb's case. Second Am. Compl. ¶¶ 40, 100. Nurse Baral advised that Cobb should follow up for "elective laser treatment." *Id.* ¶ 100. Cobb says that Nurse Fontana refused to schedule the laser treatment because it was inaccurately characterized as "elective," when it was actually necessary to relieve his pain and discomfort. *Id.* ¶¶ 101–02.

Cobb filed a grievance with the Jail asking to be taken to the Burn Clinic for laser treatment, which was denied. Second Am. Compl. ¶ 106; R. 123-13, Pl.'s Exh. 13, Grievance. He appealed, and Chief of Corrections Sciame denied the appeal. Second Am. Compl. ¶ 107; R. 123-14, Pl.'s Exh. 14, Grievance Appeal; R. 123-15, Pl.'s Exh. 15, Sciame Letter. Sciame concluded that the appeal was unfounded because Cobb's "case ha[d] been reviewed by the Loyola Burn Center with [Jail] medical staff and a treatment plan ha[d] been developed." Second Am. Compl. ¶¶ 107–08; Sciame Letter. Sciame also noted that the laser treatment was elective. Second Am. Compl. ¶¶ 107–08; Sciame Letter.

Cobb was later transferred back to Lake County Jail, where he received laser treatment. Second Am. Compl. ¶¶ 110, 112, 116.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**III. Analysis**

Because Cobb was a pretrial detainee at McHenry County Jail, the Fourteenth Amendment's Due Process Clause governs his medical-care claim. Second Am. Compl. ¶ 13; *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022). To adequately plead a medical-care claim, a pretrial detainee must plausibly allege the defendant "did not take reasonable available measures to abate the risk of serious harm to [the detainee], even though reasonable officers under the circumstances would have

understood the high degree of risk involved, making the consequences of the defendant['s] conduct obvious." *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026) (cleaned up). In other words, the detainee must plead that "a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* (cleaned up). Unlike Eighth Amendment claims for post-sentencing prisoners, this inquiry is objective; "a plaintiff does not need to [allege] subjective awareness of the risk of harm." *Id.* (cleaned up).

Sciame argues that Cobb fails to state a plausible claim against him because, based on the facts alleged, (1) Sciame did not personally interfere with Cobb's care, (2) it was objectively reasonable for Sciame to rely on the recommendations of medical personnel, (3) Sciame is entitled to qualified immunity, and (4) Sciame's actions did not cause Cobb's denial of medical care. R. 132, Def.'s Br. at 3–6.[3] The Court addresses each argument in turn.

The first argument is that Cobb does not allege that Sciame personally interfered with Cobb's medical care. Def.'s Br. at 3–5. "To face section 1983 liability, a defendant must be personally (not vicariously) responsible for the deprivation of the plaintiff's constitutional right." *Zemlick*, 164 F.4th at 1011. Supervisory officers like Sciame "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (cleaned up). Cobb's grievance appeal

[3]Sciame also argues that Cobb's "group pleading" does not "establish what Sciame himself did." Def.'s Br. at 5–6. But the Second Amended Complaint clearly alleges that Sciame denied Cobb's grievance appeal. Second Am. Compl. ¶¶ 107–08.

notified Sciame that he had not received laser treatment, and Sciame approved this medical decision by denying the appeal. Second Am. Compl. ¶¶ 106–08; Grievance Appeal; Sciame Letter. Cobb thus adequately pleads that Sciame was personally involved in the alleged due process violation. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).[4]

Sciame next argues that it was not objectively unreasonable for him to deny the grievance appeal based on the medical professionals' determination that the laser treatment was elective. Def.'s Br. at 5. "Although pretrial detainees have a right under the Fourteenth Amendment to adequate medical care," the Seventh Circuit has "long recognized that correctional institutions typically engage in the division of labor between medical professionals and other security and administrative staff." *McGee*, 55 F.4th at 569 (cleaned up). "When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention." *Id.* (cleaned up). "An exception exists only if a jail official had reason to know that the medical staff was failing to treat or inadequately treating an inmate." *Id.* (cleaned up).

[4]In arguing that he was not personally involved in any constitutional deprivation, Sciame relies on inapposite cases. *See* Def.'s Br. at 4. For instance, he cites *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), which held that a prison official was not deliberately indifferent for responding to a grievance by directing medical personnel to provide the prisoner with care, and denying another grievance as untimely. *Id.* at 595–96. But the Seventh Circuit acknowledged that the official "played a[] personal role" in the case by reviewing the grievances. *Id.* at 594.

Here, even viewing the allegations in Cobb's favor, it was objectively reasonable for Sciame to defer to Nurse Fontana's denial of the laser treatment. Based on the allegations in the Second Amended Complaint, Sciame knew only that Cobb had other treatments in place (pain medication, lotions, and creams), and that the recommended laser treatment was elective. Second Am. Compl. ¶¶ 91, 100, 106; 04/17/2024 Medical Note; Sciame Letter. Cobb contends that Nurse Peterson determined that the treatment was necessary, not merely elective, and that Nurse Baral could not override that determination because Baral had not personally examined Cobb. Second Am. Compl. ¶ 101; R. 138, Pl.'s Resp. Br. at 6–7. But the actual grievance says only that Cobb "was given a referral by burn specialist Paula Peterson, APN to have laser [treatment] for keloid scar to chest [sic] for itching and pain." Grievance; *see also* Grievance Appeal (asking "to be taken to[] Loyola University Medical Burn Center for keloid[] removal as referred by burn specialist Paula Peterson"). The grievance and appeal do not dispute or address Nurse Baral's characterization that the referral was for an *elective* treatment. Thus, there are no facts to suggest that *Sciame* knew that Nurse Peterson had previously determined that the treatment was necessary, rather than elective (and by extension, that Sciame knew that Nurse Fontana was inadequately treating Cobb by denying the laser treatment). Because the only information Sciame had was that the current treatment plan was adequate and laser treatment was elective, it was objectively reasonable for him to defer to Nurse Fontana's denial of the laser treatment.

Even if the Court reads Cobb's grievance and appeal generously to clearly inform Sciame that Nurse Peterson believed the treatment was not elective, Sciame's denial of the appeal would still have been objectively reasonable. Even in that scenario, Sciame would have had two conflicting pieces of information from medical professionals: a referral from Nurse Peterson that characterized the laser treatment as necessary, and a statement from Nurse Baral that the treatment was elective. Both nurses work at the Burn Clinic, and the more recent characterization came from Nurse Baral. *See* Second Am. Compl. ¶¶ 91, 100. It would not be objectively unreasonable for a jail official in Sciame's position to defer to the more recent characterization from the same clinic, and thus conclude that laser treatment was unnecessary. *Cf. Burton v. Downey*, 805 F.3d 776, 785–86 (7th Cir. 2015) (concluding that jail medical staff acted reasonably by prescribing non-narcotic pain medication to a detainee based on his surgeon's recommendation, even though the detainee's other physician had previously "followed a different court of treatment" by prescribing narcotics). Because Cobb fails to allege any facts that suggest Sciame's denial of the grievance appeal was objectively unreasonable, he does not plausibly state a Fourteenth Amendment claim against Sciame.

In the alternative, at the very least, qualified immunity shields Sciame from liability. "[G]overnment officials performing discretionary functions—like jail officials managing pre-trial detainees—are immune from civil liability …. Such officials receive qualified immunity unless: (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the

time." *Zemlick*, 164 F.4th at 1010 (cleaned up). As just described, Cobb does not plausibly allege that Sciame violated his constitutional rights. But even if Cobb had met that threshold, he must also defeat qualified immunity at the second step. *See id.* "For a right to be clearly established, existing precedent must place the statutory or constitutional question beyond debate." *McGee*, 55 F.4th at 572 (cleaned up). Specifically, "every reasonable officer must have understood that deferring to the judgment of medical staff in these circumstances was unlawful." *Id.*

Cobb cannot overcome qualified immunity at the second step. He identifies no cases holding that a jail official violated a pretrial detainee's constitutional rights in similar factual circumstances. *See* Pl.'s Resp. Br. at 10–11 (citing general case law about detainees' rights to medical care); *see also McGee*, 55 F.4th at 572 (describing how plaintiffs cannot "rel[y] on cherry-picked legal propositions about an inmate's constitutional entitlement to adequate medical care" to show that, under the particular facts of their case, a constitutional violation was clearly established). To the contrary, the Seventh Circuit has repeatedly held that jail officials "are not constitutionally obligated to override the judgment of medical professionals unless they have reason to know that an inmate is receiving inadequate treatment." *McGee*, 55 F.4th at 573. And the Seventh Circuit has permitted jail officials to defer to medical staff under circumstances where it was arguably much more obvious that the detainee required medical care. *See id.* at 574; *see also Zemlick*, 164 F.4th at 1013 (collecting cases). Given the established law, reasonable officers in Sciame's position would not have understood that deferring to Nurse Fontana's denial of the laser treatment was

unlawful. Thus, it was not clearly established that Sciame would violate Cobb's constitutional rights by denying his grievance appeal. *See Zemlick*, 164 F.4th at 1013–14. Cobb cannot overcome qualified immunity, which is an independent basis to grant Sciame's motion to dismiss.

Lastly, Sciame argues that Cobb fails to allege causation because the Jail's health services "had already classified" the laser treatment as elective, and Sciame's grievance appeal denial "could not have changed that classification." Def.'s Br. at 6. But it is plausible that if Sciame, the Chief of Corrections, had granted the appeal and ordered the medical staff to provide the laser treatment, they would have done so, regardless of its classification in Cobb's medical records. Still, because the Court grants the motion to dismiss on other grounds, there is no need to opine on this issue further.

## IV. Conclusion

The motion to dismiss the claims against Sciame, R. 131, is granted. For now, the dismissal is without prejudice, and Cobb may file a Third Amended Complaint to fix the deficiencies (if possible) by September 11, 2026. If no amended pleading is filed by that deadline, then the dismissal will convert to a dismissal with prejudice without further order of the Court.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 28, 2026